# In the United States District Court
# for the District of Utah, Central Division

| | |
|---|---|
| SHEILA HERSCH,<br><br>            Plaintiff,<br><br>    vs.<br><br>JO ANNE B. BARNHART, Commissioner of<br>Social Security,<br><br>            Defendant. | **MEMORANDUM DECISION<br>AND ORDER**<br><br><br>Case No.  1:04CV00160JTG |

Sheila Hersch applied for Supplemental Security Income ("SSI") on January 11,
2002 alleging disability beginning in 1995.[1]  Her claim was denied at both the initial and
reconsideration levels for failure to establish disability.  The case was heard before
Administrative Law Judge Robin L. Henrie on June 11, 2003.  On September 30, 2003 the ALJ
upheld the denial of benefits, and the Appeals Council found no reason for review.  The claimant
has now filed suit under 42 U.S.C. § 1283(c)(3).  Both parties have submitted the matter on the
briefs.

## FACTUAL BACKGROUND

Sheila L. Hersch, a forty year-old woman with a high school education and a
history of employment in child care, was diagnosed with fibromyalgia and a possible seizure
disorder in 1996.  At the time, she also complained of neuromuscular impairments, asthma, pain,

---

[1]Between 1996 and 2000, Claimant has filed three other applications for SSI and one for
Disability Insurance Benefits.  Each was denied.

high-blood pressure, acid reflux disease, depression, anxiety, hearing loss, and bladder-control problems.

She now claims that these infirmities prevent her from holding a job.  Dr. Neville, one of her treating physicians, echos these sentiments. He claims that she would be unable to work in even a low stress job.  Dr. Chowdhury, another treating physician, claimed that claimants seizure-like symptoms would cause her to miss at least three or four work days per month.  (T. 288).  A vocational expert determined that it was impossible for her to maintain employment with such impairments.  (T. 551-552).

However, the Social Security Administration (SSA) is not convinced that these maladies are as serious as claimant suggests. Doctors found it difficult to pin-point the causes of these ailments.  Extensive testing could not uncover the etiology of claimant's alleged seizures and several doctors wondered if her illnesses were factitious or fabricated in order to secure the pain medications that she had been prescribed.  Further, claimant did not follow several doctors' suggestions, and carried herself in a way that was inconsistent with the debilitating pain she alleged.

### The ALJ's Opinion

ALJs utilize a five-step process to determine disability pursuant to 20 C.F.R. § 416.920.  The ALJ found that claimant satisfied the first two steps in that she had not engaged in substantial gainful activity since January 11, 2002, and "objective medical evidence establishes that severe impairments have been diagnosed and treated from the onset date. . ., " which

included her alleged seizure disorder, fibromyalgia[2], and a factitious disorder.[3]  (T. 18).

At Step Three, the ALJ found that the claimant was not *per se* disabled. Claimant's factitious disorder was not disabling because it did not lead to *marked* restrictions of activities of daily living, social functioning, concentration or *repeated* episodes of decompensation.  Further, claimant's seizure disorder "has not met or equaled, singly or in combination, an impairment listed in Appendix 1."  (T. 18).

The ALJ determined the claimant's residual functional capacity ("RFC") at Step Four.  The RFC test is calculated to help determine whether a claimant is unable to engage in any past relevant work.  The ALJ determined that the claimant would be able to perform her past occupation of child care attendant because she would not be able to maintain medium exertion or function in a job of a medium skill, provided that her job did not require, among other things, lifting more than 8.5 to 10 pounds, sitting for more than forty-five to sixty minutes at a time, climbing stairs, or reaching or lifting over her head.  (T. 26)

During Step Five, the Commissioner has the burden of showing that a significant number of jobs exist in the national economy that the claimant could perform based on her RFC. The ALJ found that claimant could work as a Food and Beverage Clerk, telephone Quotation Clerk, or Call-Out Operator.  Based on the standards set in the Medical-Vocational Rules, these jobs exist in sufficient numbers in the national economy.

---

[2]Fibromyalgia is a chronic condition which causes muscular pain and fatigue.  Its cause is unknown.

[3]A factitious disorder is any illness deliberately created by the patient in order to assume the role of a sick individual.

### STANDARD OF REVIEW

This Court must decide whether the ALJ's decision was supported by substantial evidence. *Castellano v. Secretary of Health and Human Services*, 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a mere scintilla. It must be sufficient such that a reasonable mind would accept it to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Unless this standard is met, a court must not re-weigh evidence which met the threshold standard of being substantial. *Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir. 1991).

### ANALYSIS

This Court concludes that the ALJ's decision is supported by substantial evidence. There is sufficient evidence in the record to support the ALJ's deteminations that claimant's allegations were not credible and that her treating physicians' opinions were not due controlling weight. Likewise, the ALJ's RFC determination was supported by substantial evidence. Accordingly, the ALJ's determination is affirmed.

    A.     *The ALJ could discount claimant's subjective allegations of pain, neuromuscular disorder, and seizure disorder.*

ALJ was entitled to discount claimant's subjective complaints because they were not consistent with the record. Medical testing is critical to determine the extent of a claimant's limitations. However, in cases such as this, where the severity of most symptoms are not quantifiable and tests may be inconclusive, the credibility of claimants subjective allegations is paramount. Such testimony must be considered "to the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence, and other evidence."

20 C.F.R. § 416.929(a), SSR 96-7p.  Credibility determinations may be made in a three-step analysis.  First, if the allegations are consistent with objective medical evidence, they must be given great weight.  Second, the court determines whether substantial evidence supports ALJ's decision to discount the claimant's credibility.  Finally, the court must determine whether the ALJ clearly stated the weight afforded to claimant's testimony.  *Diaz v. Secretary of Health and Human Services*, 898 F.2d 774, 777 (10th Cir. 1990).

In this case, claimant's testimony conflicts with "medical signs and laboratory findings."  In fact, claimant does not support her conditions with any laboratory findings.  For instance, the ALJ argues that "despite weekly visits to physicians and the emergency room, there is no evidence of an organic basis for the level of pain and seizure activity alleged. . . . [All tests] have been normal," and a study at the University of Utah's Seizure clinic determined that claimant "does not have seizures." (T. 24).

Manifestly, the ALJ's decision to discount claimant's credibility is supported with substantial evidence.  *Diaz,* 898 F.2d at 777.  At her hearing before the ALJ, claimant carried herself in a  dramatic manner but showed no sign of the excruciating pain that she claimed to be experiencing: "[claimant] did not shift or squirm . . . and she was presented as a happy, pleasant and humorous individual."  The ALJ, making a reasonable credibility determination, found this behavior to be inconsistent with tremendous pain that the claimant alleged.[4] (T. 23).  Further, during a 2002 examination by Dr. Chowdhury, claimant became upset when her doctor informed her that she could no longer drive.  Claimant refused to leave and claimed to have a seizure every time the medical staff attempted to help her out.  (T. 24).  Based on this evidence, malingering

---

[4]At the hearing, claimant claimed her pain was a "nine on a scale of one to ten."  (T. 23)

certainly seems possible.  *Id.*

Evidence that claimant feigned symptoms in order to obtain prescription pain medications also impeaches her subjective allegations.  *Anderson v. Shalala*, 51 F.3d 777, 780 (8th Cir. 1991).  Dr. James F. Arango examined claimant on April 20, 2003 and noted ". . . The patient uses the emergency room as a primary source of her medical care, primarily in a drug-seeking pattern . . . .  Her visits crescendo when she is out of her pain medicine and just before she sees her doctor who prescribes her an unlimited amount of Lortab."  (T. 477).

Further, claimant's failure to follow her doctor's medical advice diminished her credibility.  *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991).  Courts reason that one who is truly affected by an illness would take all necessary steps to ameliorate her symptoms.  In *Hargis*, the court discounted subjective pain allegations after the claimant refused to follow the prescribed course of treatment for a back problem and did not take pain medication.

In the case at bar, the ALJ used the claimant's refusal to follow treatment plans for her asthma and psychological problems to discount *all* of her subjective claims.  Although this is certainly an extension of *Hargis*, this court finds it to be justified under the facts and circumstances of this case.  The Tenth Circuit has already held that failure to follow a prescribed treatment plan is probative of whether or not the claimant has exaggerated the symptoms that the plan was meant to ameliorate.  Whether one has the propensity to exaggerate symptoms of any illness is certainly probative of whether the claimant is fabricating her other allegations, especially since none of them are supported by solid medical evidence and the plaintiff has been diagnosed with a factitious disorder.

The ALJ also supports his conclusions with examples of activities in which the

6

claimant participated that would suggest the existence of less pain, social difficulties, and physical limitations than asserted.  The ALJ points to one such instance explicitly in her discussion of credibility, although she cites other examples throughout her decision that would be equally applicable.[5]  For instance, claimant vacationed in Wendover, Nevada during the time of alleged disability.  The ALJ notes that vacation and disability are not *per se* inconsistent, but he also notes that claimant exhibited the ability to move, plan, relate to others (she was visiting a friend), and sit for long periods of time.

The ALJ explained his decision carefully and adequately. After two pages of citations to the record indicating a variety of reasons to reject the claimant's testimony, the ALJ clearly states that he is "discounting the claimant's subjective complaints and their alleged functional affect."  Such a statement provides a clear basis for an unambiguous holding and is legally sufficient.

In sum, the aforesaid evidence is substantial and sufficient to support the ALJ's conclusions.  Although there may be plausible explanations for each individual argument, the totality of the ALJ's conclusions forms a strong basis from which a reasonable person could infer that the claimant was exaggerating her symptoms.  Accordingly, this Court rules that the ALJ's decision to discount claimant's subjective complaints is supported by substantial evidence.

B.      *The ALJ's decision to discount the opinions of claimant's doctor's is supported by substantial evidence.*

Because most disability cases include a variety of medical evidence, the Social Security Administration has developed guidelines to assist ALJ's and reviewing courts when

---

[5]For instance, claimant cared for her daughter after surgery, had a boyfriend, attempted to go fishing, and cared for her granddaughter for several hours.  (T. 508–510, 518–519, 514).

assigning weight to various medical opinions.   More weight should be given to the claimant's

treating physician's opinions because they are "most able to provide a detailed, longitudinal

picture of [one's] medical impairment(s) and may bring a unique perspective to the medical

evidence that cannot be obtained from the objective medical findings alone." 20 C.F.R. §

404.1527(d)(2).

        However, such opinions may be flawed or biased.  Thus, the regulations provide a

two-step process which ALJs may use to determine the amount of weight a treating physician's

opinion is due.  If the treating physician's opinions are "well-supported" by clinical and

laboratory diagnostic techniques and are consistent with other substantial evidence, then they are

due "controlling weight."  If they are not, the court must determine the amount of weight they

should be assigned.  *Id*., *Watkins v. Barnhart*, 350 F.3d 1291, 1300 (10th Cir. 2003).  This

requires the ALJ to use his discretion to balance several factors including the length of the

treatment relationship, the nature and extent of the treatment relationship, and "other factors."  20

C.F.R § 404.1527(d)(2)(i)–(ii).  Regardless of the weight placed on the treating physician's

opinion, a doctor may not conclude that the claimant's impairments qualify them as disabled.  20

C.F.R. § 404.1527(e).

        In the case at bar, the ALJ did not give claimant's treating physicians' opinions

controlling weight because their diagnoses are not well-supported in the medical record.   As

mentioned, claimant's seizures could not be proved by medical testing. (T. 24) The only indicator

of claimant's true impairments came from her own subjective complaints which also lack

credibility.  Thus, the ALJ gave the treating physician's opinions "diminished weight."

        Claimant contends that the ALJ's decision was flawed because he didn't "give

good reasons" for the weight he assigned, or if he completely rejected the testimony, he must provide "specific, legitimate reasons for doing so."  20 C.F.R. § 1527(d)(2), *Watkins*, 350 F.3d at 1301.  In *Watkins*, the Tenth Circuit remanded a case because the reviewing court was "left to speculate what lead the ALJ to [his or her] conclusion."  *Id*.  Here, however, the ALJ clearly states that he gives the treating physicians's opinion "diminished weight."  (T. 26) That conclusion, as we have found, is legally sufficient because it is supported by substantial evidence.

C.    *The ALJ's denial of benefits is supported by substantial evidence.*

In light of the conclusions above, the ALJ's denial of disability benefits is supported by substantial evidence.  Substantial evidence is "more that a mere scintilla."  It is evidence that a reasonable mind would accept to justify a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  However, a reviewing court must defer to the specialized knowledge of the ALJ when appropriate, and must not reweigh evidence.

Claimant contends that the ALJ's RFC determinations were made contrary to the bulk of the evidence and thus must be overturned.  Since claimant's treating physicians have observed her in the throws of a seizure and accept their veracity, the issue is not whether claimant is impaired by the seizures, but the extent of that impairment.  (Pl. Brf. 9).  Since each physician suggested that her seizure disorder disabled her from working, the ALJ's determinations were not supported by substantial evidence. Claimant's aforesaid arguments oversimplify the ALJ's approach.  Because claimant cannot produce medical data to prove an etiology of her possible seizures, all diagnoses must be based on her subjective allegations and her doctor's speculation.  The ALJ was justified in looking to other evidence–including the University of Utah Seizure

9

Clinic conclusion that her she had no seizures and evidence suggesting that her seizures would not be a major impediment to performing certain tasks–when determining the effect claimant's alleged seizures had on her ability to work.  (T. 24–25).

Claimant also agues that the ALJ did not consider her fibromyalgia when making his RFC determination.  Specifically, claimant contends that she was disabled by pain and the inability to carry out several types of motor functions.  (T. 163).  However, the ALJ did not have to defer to her subjective allegations or her treating physician's notes.  Instead, the ALJ could look to other evidence.  First, the claimant was able to provide some care for her granddaughter.  (T. 22).  She traveled and was able to lift ten pounds.  *Id.*

After determining that much of claimant's evidence was not credibile, the ALJ was faced with a great deal of other data that suggested that claimant could perform a wide variety of tasks that would allow her to find work in the national economy.  In 2002, a doctor found that claimant was able to get on and off of an examination table with little difficulty, fully extend her legs, and had no back pain.  Further, he noted that the claimant had normal strength.  (T. 297).  Claimant also exhibited normal coordination, and a neuromuscular examination revealed no apparent problems.  (T. 20).  The ALJ was also aware that claimant suffers from no thought disorders and that her brain MRI was normal.  *Id.*  She has also exhibited the ability to carry out simple instructions, and her results on the Global Assessment of Functioning (a test used to determine the social, occupational, and psychological functioning of adults) show that her impairments are only moderate.  *Id.*  She shows no signs of needing a wheelchair even if she insists upon using one, and has shown that she was able to care for her granddaughter, if only for short times.  *Id.* at 20–21.  Although this information may not be enough to unequivocally

conclude that the claimant is not disabled, it is amply sufficient to support the ALJ's RFC determinations.

## CONCLUSION

The ALJ's decision is supported by substantial evidence.  Despite the claimant's detailed and extensive medical history, the ALJ was justified in discounting her credibility as well as the medical findings of her treating physicians.  Although the evidence was given diminished weight, the bulk of the remaining data suggests that the plaintiff could perform all of the activities detailed in the RFC.  Accordingly, it is hereby

ORDERED that the ALJ's decision is AFFIRMED.

DATED this 5th day of April 2006.

J. THOMAS GREENE
UNITED STATES DISTRICT JUDGE

11